IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | * | Criminal No. WMN-10-0145 |
| MARK LOMAX | * | Civil Action No. WMN-13-2375 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

On June 20, 2011, a jury convicted Defendant Mark Lomax of three counts of interference with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951. On November 8, 2011, this Court sentenced Defendant to a term of imprisonment of 240 months. Defendant appealed and on August 30, 2012, the Fourth Circuit affirmed the conviction and sentence. Defendant has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 99. As explained below, Defendant's motion primarily focuses on a relatively inconsequential piece of evidence admitted during the course of his trial, a black wrist brace. The motion is ripe and, upon a review of the motion, the record, and the applicable case law, the Court determines that no hearing is necessary and that the motion should be denied. See 28 U.S.C. § 2255(b) (allowing the district court to decide a § 2255 motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

Defendant was indicted and convicted of robbing the same Fells Point clothing boutique, "Killer Trash," on three separate occasions in August of 2009. At the time of the first robbery,

which occurred on August 19, 2009, Brittany Byers was working as the cashier/salesperson. Defendant entered the store and pretended to shop for about 15 minutes until most of the other customers left the premises. He then placed a hard handgun-shaped object wrapped in a dark plastic bag against Ms. Byers' ribs and ordered her to open the cash register. She did so and Defendant took cash from the register and left the store. Police were called and Ms. Byers gave a description of the suspect.

The very next day, while Ms. Byers was again working at Killer Trash, she recognized Defendant as he walked by the store. She immediately started to call 911 but Defendant turned around, entered the store, and again brandished the gun-shaped object in the plastic bag and ordered her to open the register. Defendant removed cash from the register and left the store. Ms. Byers called the police and again gave a description of Defendant.

Two days later, on August 22, 2009, around closing time, Defendant pushed his way into the store as Ms. Byers was in the process of locking up. On this occasion, a friend of Ms. Byers, Michael Voorhis, was with her in the store. Defendant again brandished the gun-shaped object in the plastic bag and ordered Mr. Voorhis to open the register. While Defendant was distracted, Ms. Byers attempted to move towards the door and Defendant grabbed her by the throat and pushed her into a rack

of clothing.  Mr. Voorhis grabbed a baseball bat from behind the counter and struck Defendant several times about his body and on his right arm as Defendant raised that arm to fend off Mr. Voorhis' attack.  Bleeding from his face and head, Defendant broke free and fled the premises.

An individual matching the description of Defendant committed several other similar robberies in the next few days.  Witness descriptions and security videos from those robberies indicated that the culprit was wearing a black wrist brace on his right arm.  Defendant was arrested on August 25, 2009, after being identified, in part, because he was wearing a black wrist brace on his right arm.  He also fit the description of the suspect given by Ms. Byers.  When apprehended, Defendant had a folding carpenter's ruler in his waistband, taped into the shape of a handgun and wrapped in a plastic bag.  He was taken into custody and gave a recorded statement confessing to the Killer Trash robberies.  He was subsequently treated for a broken arm.  A DNA sample was also taken which was subsequently confirmed as a match with samples of blood recovered at Killer Trash.

In his current motion, Defendant suggests that the brace admitted into evidence at trial was not the brace he was wearing when arrested but, instead, was a different brace recovered when the police searched his residence following his arrest.  Defendant suggests that, when the detectives realized that they had failed to secure the "infamous Blackbrace" he was wearing

when arrested and that "their entire case against petitioner was in jeopardy," they engaged in a "deliberate criminal scheme" to falsify evidence. ECF No. 101 at 4. He informed his counsel of this theory but counsel initially refused to argue the issue. Defendant concedes, however, that "Defense Counsel made a vigorous, yet perfunctory argument regarding the [two wrist braces]" in closing argument. Id. at 8.

Defendant's first three grounds for relief all relate to his wrist brace theory. As Ground One, he asserts "Trial Court Error" based on the trial court's failure to conduct an evidentiary hearing concerning the wrist brace. As Ground Two, he alleges "Police and Prosecutorial Misconduct." As Ground Three, Defendant asserts he was provided "Ineffective Assistance of Trial Counsel" when his counsel failed to act after Defendant informed his counsel that the government "does Not have pivotal evidence (Black Brace)." ECF No. 99 at 5 (emphasis in original).

As an initial matter, the Court notes that these arguments could have been raised on appeal and were not. Thus, they were waived. In addition, the Court notes that Defendant offers no real evidence that the brace admitted was not the one he was wearing when arrested. Given the overwhelming weight of other evidence against him, it defies all logic that the police or prosecutor would have engaged in the misconduct alleged. Ms. Byers, who had three separate opportunities to observe Defendant

in close proximity readily identified him, both out of court and in court. Similarly, Mr. Voorhis, who also observed Defendant in a close encounter, was able to readily identify him. Furthermore, Defendant had a broken arm, consistent with the injuries sustained by the perpetrator of the third Killer Trash robbery. DNA from the blood in the store after that third robbery matched Defendant's DNA. And, if all that evidence was not enough, the Government also had Defendant's recorded confession to all three robberies.

As to Defendant's claim of ineffective assistance of counsel, to sustain such a claim, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). Furthermore, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297. "If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court may not grant relief solely because the petitioner can

show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhard v. Fretwell, 506 U.S. 364, 369 (1993)).

The same overwhelming evidence against Defendant that renders it implausible that the police or prosecutor would have engaged in misconduct also renders it impossible for Defendant to meet the Strickland prejudice prong. In light of the weight of evidence against Defendant, including his own confession, the exclusion of the wrist brace would not have altered the jury's verdict. Even as to the wrist brace issue, Defendant concedes that he was wearing a wrist brace when arrested, as he must, given that the police took a photograph of his arm after the arrest with a wrist brace.

As a fourth ground for his motion, Defendant posits an "Illegal Sentence." In the motion, Defendant appears to take issue with the fact that the indictment was for "Interference with Commerce by Robbery," whereas the verdicts as orally announced in open court were simply for "Robbery." Defendant suggests that these orally announced verdicts are "insufficient to sustain [a] (240) month sentence." ECF No. 99 at 5. The instructions given to the jury, however, clearly explained that, to find Defendant guilty, the jury had to find that he did

"unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce . . . and the movement of articles and commodities in such commerce by robbery." 6/15/2014 Tr. at 79. As to whether there was insufficient evidence of an effect on interstate commerce, that issue was raised on appeal and rejected, see <u>United States v. Lomax</u>, No. 11-5089, slip op. at 3 (4th Cir. Aug. 23, 2012), and cannot be re-raised here.

    For these reasons, Defendant's motion must be denied. A separate order will issue.

                                           _____/s/_____
                                           William M. Nickerson
                                           Senior United States District Judge

DATED: April 2, 2014.